**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SANDRA J. BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-1418-D |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Sandra J. Brooks, seeks judicial review of a denial of disability insurance benefits and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and the cause remanded for further administrative proceedings.

**I.     Agency Proceedings**

Ms. Brooks filed applications for disability insurance benefits and SSI on June 8, 2004. She alleged a disability onset date of July 1, 2003, later amended to October 23, 2004. AR 61-64, 269-270, 292. After Ms. Brooks' applications were denied initially and on reconsideration, an administrative hearing in this matter was held on April 3, 2007, before Administrative Law Judge (ALJ) David W. Engel. AR 287-328. Following this hearing, ALJ Engel issued an unfavorable decision on June 29, 2007. AR 14-22. The Appeals

Council denied Ms. Brooks' request for review, AR 5-7, making the decision of the ALJ the final decision of the Commissioner.

## II.    The ALJ's Decision

The ALJ applied the five-step sequential evaluation process required by agency regulations.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920.  He first determined that Ms. Brooks had not engaged in substantial gainful activity since the alleged onset date.  AR 16.  At step two, the ALJ determined that Ms. Brooks impairments -- depression, anxiety, fibromyalgia and degenerative joint disease -- are severe impairments.  AR 16. At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations.  AR 16-17.  At step four, the ALJ determined Ms. Brooks' residual functional capacity (RFC).  AR 17.  As relevant to the claims raised in this action, he made the following RFC determination regarding Plaintiff's mental impairments:

> She is able to understand, remember, and carry out simple through moderately detailed instructions in a work-related setting, and is able to interact with co-workers and supervisors under routine supervision, limited to occasional interaction with the general public.

AR 17.  Based on Ms. Brooks' RFC, the ALJ determined she could not perform her past relevant work as a housekeeper, store clerk, certified nurse assistant and sales attendant.  AR 20.  At step five, the ALJ relied on vocational expert testimony in conjunction with the Medical-Vocational Guidelines and determined Ms. Brooks could perform various other

work which exists in significant numbers both locally and in the national economy. AR 21-22.

### III.  Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

### IV.  Issues Raised on Appeal

Ms. Brooks' claims relate only to her mental impairments. She claims the ALJ committed legal error in his analysis of the opinion of the treating psychiatrist and other medical evidence of record pertaining to her mental health treatment. Ms. Brooks further claims the ALJ had a heightened duty to develop the record because she was not represented

by counsel and the ALJ breached that duty by not recontacting the treating psychiatrist and not obtaining medical records brought to the ALJ's attention during the hearing.

## V.  Analysis

### A.  Treating Psychiatrist Opinion

The Commissioner will generally give more weight to the opinion of a treating source than to the opinion of a non-treating source. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(d)(2)); see also 20 C.F.R. § 416.927(d)(2). The first step in the process of evaluating the opinion of a treating source is to determine whether the opinion is entitled to "controlling weight." *Id.* The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Watkins*, 350 F.3d at 1297 (*quoting* Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4). Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and

extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id*. at 1301 (quotation omitted).

Ms. Brooks' treating psychiatrist, Keith Russell, D.O., completed a Mental Medical Source Statement on December 1, 2006. AR 247-250. Dr. Russell opined that Ms. Brooks has moderate limitations in the ability to remember locations and work-like procedures and the ability to understand and remember very short and simple instructions. He opined Ms. Brooks is markedly limited in her ability to understand and remember detailed instructions. AR 247. As to sustained concentration and persistence, Dr. Russell opined Ms. Brooks has moderate limitations in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. She also has moderate limitations in the ability to sustain an ordinary routine without special supervision and the ability to make simple work related decisions. Dr. Russell opined Ms. Brooks has marked limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods and the ability to work in coordination with or proximity to others without being distracted by them. AR 248. Dr. Russell further opined that Ms. Brooks has moderate

limitations in all areas of social interaction and adaptation.  AR 248-249.  Dr. Russell diagnosed Plaintiff with bipolar disorder, NOS[1] and assigned her a GAF of 50.[2]  AR 250.

The ALJ rejected Dr. Russell's opinion that Plaintiff "has significant work-related restrictions including a marked limitation in the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms."  AR 20.  As grounds for rejecting Dr. Russell's opinion that ALJ stated:

> Dr. Russell prescribed Lexapro and added Trazodone for sleep, but he has not recommended regular day treatment or other in-depth counseling for treatment of the claimant's symptoms.  The severity of the claimant's limitations as stated by Dr. Russell is not consistent with the claimant's treatment records and thus, his opinions are not afforded controlling weight.

AR 20.  Although the ALJ refused to give controlling weight to Dr. Russell's opinion, he did not complete the required analysis by determining what weight, if any, Dr. Russell's opinion should be accorded.

Tenth Circuit precedent makes clear that it is incumbent upon an ALJ who refuses to give controlling weight to the opinion of a treating physician to go further and determine what weight, if any, such an opinion is to be given.  *Langley*, 373 F.3d at 1120, 1123.  Just

---

[1] Not Otherwise Specified

[2] A global assessment of functioning (GAF) score "is a subjective determination based on a scale of 1 to 100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006) (*citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) (DSM-IV) at 32).  A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." Id. [at 34]." *Langley*, 373 F.3d at 1122 n. 3 (10th Cir. 2004) (*citing* DSM-IV at 34).

as the ALJ did in *Langley*, the ALJ here refused to give Dr. Russell's opinion controlling weight. He then failed, however, to discuss what lesser weight should be given to this opinion in light of the relevant factors.

The ALJ further erred by rejecting Dr. Russell's opinion as inconsistent with the other medical evidence of record but then failing to identify the treatment records that he considered to be inconsistent with Dr. Russell's opinions. As in *Langley*, "[b]ecause the ALJ failed to explain or identify what the claimed inconsistencies were between [the opinion of Dr. Russell] and the other substantial evidence in the record, his reasons for rejecting [the] opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings." *Langley*, 373 F.3d at 1123 (*quoting Watkins*, 350 F.3d at 1300).

Reviewing the evidence of record, the Court is hard-pressed to find claimant's treatment records to be inconsistent with Dr. Russell's opinion. As an initial matter, the only other functional assessment addressing Plaintiff's mental impairments is the Psychiatric Review Technique Form completed on December 7, 2004, by Hannah B. Swallow, Ph.D. AR 169-182. Dr. Hannah found no functional limitations resulting from Ms. Brooks' mental impairments. AR 179. The ALJ clearly rejected Dr. Swallow's opinion because he found severe mental impairments at step two and included functional limitations based on these mental impairments when assessing Ms. Brooks' RFC.

The only other medical evidence regarding Ms. Brooks' mental impairments are the treatment records from Northwest Center for Behavioral Health. AR 200-214; 242-246. Addressing the medical evidence, the ALJ summarized these treatment records. AR 19. For

example, the ALJ noted a psychosocial assessment of Ms. Brooks performed at the Northwest Center for Behavioral Health on August 10, 2005 and summarized that assessment as follows:

> [T]he claimant reported mood swings, anger, irritability, feelings of worthlessness, and thoughts of suicide. The claimant reported a history of childhood abuse and current hand pain due to fibromyalgia. The claimant's grooming and hygiene were good and no abnormalities or handicaps were noted. She was attentive and alert, her mood was appropriate and her manner was cooperative. The claimant's current level of functioning was 55 out of 100. The claimant was prescribed Wellbutrin and participated in individual counseling.

AR 19. There is nothing in this summary that indicates any obvious inconsistency between the treatment Plaintiff received and Dr. Russell's opinion. *See Langley*, 373 F.3d at 1122 (ALJ's reason for rejecting treating physician's opinion on ground that it was inconsistent with other medical evidence was not supported by the record where record did not contain any obvious inconsistencies between treating physician opinion and either his treatment notes or other evidence in the record relating to claimant's depression). In any event, because, as set forth above, the ALJ failed to identify the evidence he found to be inconsistent, meaningful review of the ALJ's findings is not possible and a remand is required.

Although acknowledging Dr. Russell prescribed medication for treatment of Plaintiff's mental impairments, the ALJ stated that he further rejected Dr. Russell's opinion because Dr. Russell "did not recommend regular day treatment or other in-depth counseling for treatment of the claimant's symptoms." Nonetheless, the ALJ apparently accepted Plaintiff's testimony that at the time of the hearing, she was receiving treatment from the

Northwest Behavioral Clinic every two weeks. AR 18 ("The claimant goes to Northwest Behavioral Clinic for help with emotional problems. She had to stop going for a period when she wasn't able to get to the clinic, but she currently goes every 2 weeks.").[3] The ALJ assumed "regular day treatment" and other "in-depth counseling" was both available to Ms. Brooks and necessary for the treatment of her mental health impairments. The ALJ's assumption, however, is not supported by any medical evidence. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculations or lay opinion.*") (*quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (emphasis added)). Moreover, the ALJ fails to address the relationship between such additional treatment (or lack thereof) and Plaintiff's functional restrictions resulting from her mental impairments.

For all these reasons, a remand is required. On remand, the ALJ must follow the proper treating physician analysis. If the ALJ chooses to reject the treating psychiatrist's opinion, he must state his reasons for doing so, make specific reference to inconsistent evidence relied upon in support of rejecting the opinion and discuss the additional factors governing the less than controlling weight given to that opinion.

---

[3] As Ms. Brooks points out in her briefing, her testimony is supported in part by treatment records from Northwest Behavioral Clinic which show that between August 2006 and March 2007, she received counseling on at least ten occasions. *See* AR 252.

### B.     Duty to Develop the Record

Ms. Brooks further claims the ALJ erred in his duty to develop the record. Ms. Brooks contends that because she was represented at the hearing by a non-attorney representative, the ALJ had a heightened duty to develop the record. Ms. Brooks claims that ALJ should have recontacted Dr. Russell to inquire about the therapy Ms. Brooks was receiving from a therapist she identified at the hearing as Rebecca. Ms. Brooks claims it is reasonable to assume Dr. Russell had access to these treatment records when he prepared his medical source statement.

Because a remand is required to correct the error accompanying the ALJ's analysis of Dr. Russell's opinion, this issue need not be addressed. The ALJ is reminded, however, that on remand, if the evidence from Dr. Russell is inadequate to determine whether Ms. Brooks is disabled, the ALJ should recontact Dr. Russell for additional medical evidence or clarification.

### RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by December 11th, 2008. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 21st day of November, 2008.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE